IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RODGER DALE MITCHELL,

                Petitioner,

v.                                      CIVIL ACTION NO.   2:15-cv-12156

KAREN PSZCZOLKOWSKI,

                Respondent.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the petitioner Rodger Dale Mitchell's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [ECF No. 2] and the respondent Karen Pszczolkowski's Motion for Summary Judgment [ECF No. 10] ("Respondent's Motion"). United States Magistrate Judge Cheryl A. Eifert issued Proposed Findings and Recommendations [ECF No. 34] ("PF&R") on June 30, 2016. Judge Eifert recommended that the court grant the respondent's Motion for Summary Judgment. Subsequently, the petitioner filed Objections to Magistrate's PF&R [ECF No. 40] ("Objections"), which the court will now address. For the reasons discussed herein, the court **ADOPTS** Judge Eifert's PF&R as to all facts and issues, **GRANTS** the respondent's Motion for Summary Judgment [ECF No. 10], and **ORDERS** that the Petition for Writ of Habeas Corpus [ECF No. 2] be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket of this court.

## I.    Background and Procedural History

Judge Eifert's detailed account of the factual and procedural history of this case is hereby **ADOPTED**. *See* PF&R 2–32. Following procedural wrangling, the petitioner in this case was ultimately convicted on four counts of sexual abuse by a custodian and two counts of child abuse resulting in a bodily injury. *Id.* at 17. The petitioner then switched counsel. *Id.* at 17. Afterward, following several refusals by the petitioner to submit to psychiatric screenings,[1] the petitioner was sentenced to ten-to-twenty years of imprisonment for each count of sexual abuse by a custodian.[2] *Id.* at 18.    He was also sentenced to one-to-five years of imprisonment for each count of child abuse resulting in bodily injury with those sentences running concurrently with each other but consecutive to the sexual abuse counts. *Id.* at 19. The petitioner again switched counsel, and he appealed his conviction to the Supreme Court of Appeals of West Virginia ("WVSCA"). *Id.* at 21. The WVSCA denied the petitioner's petition for appeal. *Id.* at 22.

In January 2006, the petitioner filed a state habeas petition in the Circuit Court of Jackson County, West Virginia ("Circuit Court"); however, the petition was denied because it raised no constitutional issues. *Id.* In July 2011, the petitioner again filed a habeas petition with the CCJC, raising a bevy of ineffective assistance of

---

[1] At least one of which was aimed at determining his competency to stand trial.

[2] The counts were ultimately paired up, and the court ruled that Counts 1 and 2—both charges of sexual abuse by a minor—would be served consecutively, while Charges 4 and 5—again both charges of sexual abuse by a minor—would run concurrently to Counts 1 and 2.

counsel, prosecutorial misconduct, and judicial misconduct issues. *Id.* 22–24. The Circuit Court again denied petitioner's petition, refusing to hold an evidentiary hearing because the only evidence the petitioner wished to present concerned an alleged conspiracy between the trial court, prosecutor, and his original defense counsel. *Id.* at 24.

The petitioner appealed the denial of his petition to the WVSCA. *Id.* at 27. The denial was subsequently affirmed in a memorandum decision issued on June 26, 2015. *Id.* at 27–28. Having exhausted his state remedies, the petitioner filed a 28 U.S.C. § 2254 petition on August 23, 2015. *Id.* at 28. On September 25, 2016, Judge Eifert ordered the respondent to answer the petition; accordingly, the respondent filed both an answer and Respondent's Motion on December 2, 2015. *Id.* at 30. The petitioner filed several memoranda in opposition to Respondent's Motion. Judge Eifert recommended that the court find in the respondent's favor because none of the petitioner's asserted grounds for § 2254 relief—namely ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct—constituted an unreasonable application of clearly established federal law. *Id.* at 89. The petitioner then filed his Objections, raising fourteen specific objections that will be addressed by the court in turn. For the reasons that follow, the court **ADOPTS** and **INCORPORATES** the PF&R.

## II.    Standard of Review

### A.    Federal Habeas

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs all federal habeas corpus petitions filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, the AEDPA requires a federal habeas court to presume that a state court's factual findings are correct. *See* 28 U.S.C. § 2254(e). A habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### B.    Magistrate Judge's Recommendations

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews de novo those portions of the Magistrate Judge's report to which specific objections are filed. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When a party files an objection that is too general or conclusory to focus attention on any

specific error supposedly committed by the Magistrate Judge, the court need not conduct a de novo review. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Moreover, when a party fails to object to a portion of the Magistrate Judge's report, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Diamond*, 416 F.3d at 315.

When a Magistrate Judge hears and rules on a non-dispositive pretrial matter in a case, a party may object to that determination within fourteen days after being served with a copy of the decision. Fed. R. Civ. P. 72(a). The district judge in the case must consider timely objections and "may modify or set aside any portion of a magistrate judge's non-dispositive ruling 'where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'" *Berman v. Cong. Towers Ltd. P'ship-Section I*, 325 F. Supp. 2d 590, 592 (D. Md. 2004) (quoting 28 U.S.C. § 636(b)(1)(A)); Fed. R. Civ. P. 72(a).

### C. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256.

## III.   Discussion

The petitioner raises fourteen specific objections to the PF&R. His objections can be grouped into two categories; specifically, the petitioner objects to Judge Eifert's findings related to his (1) ineffective assistance of counsel claims and (2) prosecutorial misconduct claims. The court will examine each group of objections in turn.

### A.  Objections to Findings Related to Ineffective Assistance of Counsel

The petitioner first objects to a number of Judge Eifert's findings related to his ineffective assistance of counsel claims. Criminal defendants are guaranteed "the right to effective assistance of counsel" by the Sixth Amendment to the United States Constitution.[3] *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on an ineffective assistance of counsel claim, the petitioner must show that an attorney's conduct fell below the standards articulated in *Strickland*; specifically, the petitioner

---

[3] Before proceeding, the court lauds Judge Eifert's careful analysis of the underlying state habeas petition. The Circuit Court plainly erred when it found that certain ineffective assistance of counsel claims raised by the petitioner did not state constitutional claims and ruled that those claims were barred from a state habeas petition. *See* PF&R 37–39. Ineffective assistance claims inherently invoke the Sixth Amendment and cannot be disposed of by faulty procedural rulings. *See, e.g., Tanner v. McDaniel*, 97 F. App'x 202, 203 (9th Cir. 2004) (refusing to find procedural default by a habeas petitioner where the state court misapplied procedural rules). Judge Eifert correctly afforded each of the claims improperly barred by the Circuit Court de novo review. PF&R 40-41; *see Cone v. Bell*, 556 U.S. 449, 472 (2009) (applying de novo standard of review to substantive federal constitutional claims where the state court failed to consider those claims due to faulty procedural rulings).

6

must show that his attorney's conduct both (1) "fell below an objective standard of reasonableness" and (2) prejudiced the defendant such that, absent the mistake, there is "a reasonable probability that . . . the result of the proceeding would have been different." *Id.* at 688, 694. Failure to establish either prong of the *Strickland* test is fatal to the petitioner's claim. *Id.* at 700.

The *Strickland* test is an exacting one; indeed, the Supreme Court determined, "*Strickland*'s standard, although by no means insurmountable, is highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). This is especially true where strategic decisions are involved, as the Fourth Circuit held that strategic decisions based on an investigation of the law and facts are "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Even where a petitioner clambers over *Strickland*'s first hurdle and shows that his attorney's conduct was objectively unreasonable, the petitioner must then surmount the high bar of prejudice. To successfully scale *Strickland*'s second barrier, the petitioner must show that his counsel's conduct "undermine[d] confidence in the outcome" of the underlying proceeding. *Strickland*, 466 U.S. at 694.

The court now turns to the petitioner's objections. Upon review, none of these objections satisfy *Strickland*'s demanding standard.

### i.   Failure to Elicit Testimony Regarding Children's Motive to Fabricate Testimony

The petitioner first alleges that his counsel's performance was deficient because his "defense counsel failed to elicit evidence from the children that showed

that the Petitioner and the mother engaged in continuous alcohol inflamed fighting."
Obj. 4. Moreover, the petitioner contends that his attorney's allusions to the fact that
the children did not like the petitioner during his opening and closing did not
constitute evidence, and accordingly, his attorney failed to "present[] in any fashion
to the jury" evidence beyond "the passing allusions to the beliefs of defense counsel"
of the children's bias against the petitioner. *Id.* at 6.

The petitioner's second assertion is misleading. Although counsel did not delve
deeply into the petitioner's abusive relationship with the children's mother or rely on
remarks found in investigation transcripts, he elicited the following testimony from
W.O.[4] during trial:

> Q: And from time to time, you didn't like [the petitioner],
> right?
>
> A: Yes, sir.
>
> Q: He did some things sometimes that you didn't care for,
> as far as your mother was concerned, right?
>
> A: Yes, sir.

Resp't's Mot. Summ. J. Ex 10, at 237 [ECF No. 10-10]. W.O.'s plain admission that
he did not care for the petitioner because of the way the petitioner treated W.O.'s
mother shows that defense counsel presented more than just "allusions [of his]
beliefs" regarding the children's bias. Obj. 6.

Moreover, counsel's decision to tread lightly when delving into the petitioner's

---

[4] Because the victims were minors at the time of the crimes, the court uses their initials. *See* L.R.
Civ. P. 5.2.1(a).

relationship with the children's mother constituted a reasonable strategic position given the posture of the case. In evaluating the petitioner's claim, the court must consider the "circumstances of the individual case." *Huffington v. Nuth*, 140 F.3d 572, 578 (4th Cir. 1998) (citation omitted). Here, given that the petitioner was charged with abusing the children, defense counsel's refusal to plumb the depths of the petitioner's abuse of the children's mother was strategically sound. Additionally, because the petitioner faced charges of sexually assaulting one of the children after feeding her copious amounts of alcohol, counsel's decision to steer testimony away from the petitioner's odious alcohol-related behavior was also strategically sound. Counsel's strategic decision not to represent his client as a vicious alcoholic was not objectively unreasonable; thus, that decision cannot satisfy the first prong of *Strickland*'s "highly demanding" test. *Kimmelman*, 477 U.S. at 382.

Furthermore, even if the petitioner could show that his counsel's conduct was objectively unreasonable, the petitioner cannot demonstrate prejudice. After the petitioner's counsel questioned W.O. regarding his bias, the prosecution explored W.O.'s bias on redirect. Specifically, the prosecutor elicited the following:

> Q: Can you tell us what things he did to your mom that you didn't like?
>
> A: He would hit her.
>
> Q: When did he hit her?
>
> A: Whenever he got drunk.
>
> Q: How many times did you see him hit her?

9

> A: Twice.
>
> Q: Was she hurt?
>
> A: Yes.
>
> Q: How was she hurt?
>
> A: She had her eye – he hit her in the eye because, when he was in Jackson, he hit her in the eye with his elbow whenever he was getting drunk, and my sister went over there and he hit [my sister] in the throat.

Resp't's Mot. Summ. J. Ex 10, at 250. Consequently, any prejudice the petitioner suffered as a result of his counsel's failure to portray him as a violent alcoholic was remedied by the prosecution's subsequent portrayal of him as a violent alcoholic.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner's counsel was not ineffective for failing to elicit testimony regarding the petitioner's alcohol-fueled abuse of the children's mother. Accordingly, the court **ADOPTS** the findings and recommendation of the PF&R and overrules the first objection.

### ii.    Failure to Challenge the Indictment

The petitioner next argues that counsel was deficient for failing to challenge the indictment. Specifically, the petitioner argues that counts six and fifteen of the indictment—both of which were ultimately dismissed—tainted the jurors' minds and led them to convict him. Because counts six and fifteen were ultimately dismissed, he can prove no prejudice as to those counts.

Furthermore, counsel's decision not to challenge the indictment was a strategic

10

decision. *See, e.g.*, *McArthur v. State*, 428 S.W.3d 774, 780 (Mo. Ct. App. 2014) (determining that the decision as to whether a pre-trial motion should be filed is strategic). In order for counsel's "virtually unchallengeable" strategic decision to fall beneath an objective standard of reasonableness, counsel's failure to challenge the indictment must have amounted to a "complete concession" of the defendant's case. *Bell,* 72 F.3d at 429. That is not what happened in the present case. The petitioner's counsel guided the petitioner through trial and succeeded in getting several counts dismissed—even after the jury had returned a guilty verdict. PF&R 17. Accordingly, the court will not second guess the counsel's strategic decision, and the court cannot find that the decision fell below an objective standard of reasonableness.

Moreover, even if counsel's conduct did fall below an objective standard of reasonableness, the petitioner can point to no specific prejudice. The Fourth Circuit is careful to examine deficiencies in state court indictments during habeas petitions, holding, "Variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." *Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985). It follows, then, that an ineffective assistance of counsel claim based upon failure to challenge an indictment can succeed only where counsel's failure to challenge an indictment resulted in a deprivation of the petitioner's right to due process. The petitioner's conjecture that the juror's minds could have been tainted by charges in the

11

unchallenged indictment is insufficient to show that he was deprived of due process. Therefore, the petitioner has failed to show that counsel's strategic decision not to challenge the indictment prejudiced his case.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner's counsel was not ineffective for failing to challenge the indictment. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the second objection.

### iii.    Failure to Obtain Discovery

The petitioner also argues that his counsel provided ineffective assistance because counsel did not request discovery. However, the decision to engage in reciprocal discovery is a strategic decision. *See United States v. Marenghi*, 893 F. Supp. 85, 98 (D. Me. 1995) (describing decision to seek reciprocal discovery as "part of a defendant's strategy"). Accordingly, that decision is entitled to substantial deference.

Furthermore, counsel's decision was not ineffective given the circumstances of the case. The petitioner had earlier been indicted on the same underlying facts. PF&R 2–3; Resp't Mot. Summ. J Ex. 14, at 3. Following the earlier indictment, counsel sought and received discovery from the state. Resp't Mot. Summ. J. Ex. 14, at 3–4. The earlier discovery material was largely duplicative of material in the case in which the petitioner was ultimately charged. *Id.* Moreover, to the extent there was additional material available to help the petitioner's case, counsel indicated that he

intended to receive it from the state. *See id.* (indicating that the state should provide a grand jury transcript to counsel). Therefore, counsel's conduct was not objectively unreasonable because any discovery sought would be duplicative.

Moreover, the petitioner has failed to prove that any discovery not sought would have altered the outcome of the case. Therefore, he can show no prejudice.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner's counsel did not provide ineffective assistance by refusing to engage in duplicative, reciprocal discovery. The court **ADOPTS** the findings and recommendation of the PF&R and overrules third objection.

### iv.   Failure to Have the Children Psychologically Examined

In his fourth objection, the petitioner argues that his counsel provided ineffective assistance by failing to have the children psychologically examined for signs of coaching. *See* Obj. 10–11. However, the petitioner's objection amounts to mere speculation as to what a psychological expert might—or might not—have discovered; this is insufficient to carry an ineffective assistance of counsel claim. *See Thomson v. Parker*, No. CIV-09-1136-M, 2010 WL 2610941, at *14 (W.D. Okla. April 30, 2010) (denying habeas petition based on petitioner's mere speculation as to what a psychological evaluation would reveal).

Furthermore, there is a high probability that a West Virginia court would not have ordered a psychological examination. Such examinations are granted only upon a showing of "compelling need or reason." *State v. Delaney*, 417 S.E.2d 903, 907 (W.

Va. 1992). The petitioner has pointed to no concrete evidence constituting a "compelling need or reason" to have the children psychologically examined. Therefore, because a motion to have the children psychologically examined was likely doomed to failure, he can demonstrate no prejudice by counsel's decision not to motion the court for a psychological evaluation.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner's counsel did not provide ineffective assistance of counsel by failing to have the children psychologically examined. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the fourth objection.

### v.   Failure to Report the Trial Court for Aiding the Prosecution

In his fifth objection, the petitioner argues that his counsel was ineffective for failing to have charges dismissed due to a lapsed statute of limitations. Even setting aside the petitioner's unfounded accusations of conspiracy between the judge, prosecutor, and defense counsel, the petitioner's fifth objection has no merit. The crux of his argument appears to be that his counsel should have objected to counts 1, 2, 4, and 5 because they are alcohol-based offenses and, as such, should have fallen under the one-year statute of limitations for misdemeanors. This argument incredibly warps the facts of the instant case. The petitioner was not charged with alcohol-based misdemeanors in counts 1, 2, 4, and 5; the petitioner was charged with sexually abusing his step-daughter in counts 1, 2, 4, and 5—a felony under § 61-8D-5 of the West Virginia Code. Because counts 1, 2, 4, and 5 were felony charges, they have no

14

statute of limitations. W. Va. Code § 61-11-9. Therefore, counsel was not ineffective for failing to challenge the counts on statute of limitations grounds.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that counsel's failure to challenge counts 1, 2, 4, and 5 on statute of limitations grounds does not constitute ineffective assistance of counsel. The court **ADOPTS** the findings and recommendation of the PF&R and overrules fifth objection.

### vi.    Failure to Impeach with Grand Jury Testimony

The petitioner next objects to the Judge Eifert's determination that counsel's failure to call Jill Perez[5] to the stand and impeach her with grand jury testimony did not constitute ineffective assistance. However, the decision to call a witness falls squarely within the province of trial strategy—a virtually unchallengeable province in *Strickland* claims. *See United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011); *Fields v. United States*, No. 5:12-cv-642, 2013 WL 5707255, at *9 (E.D.N.C. Oct. 21, 2013). Accordingly, this court sees no obvious error in counsel's decision not to call Ms. Perez to the stand solely to impeach her with testimony from a prior grand jury proceeding.[6]

After review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner's counsel's decision not to call Ms. Perez solely to impeach her with

---

[5] Ms. Perez is a Child Protective Service worker for the West Virginia Department of Health and Human Resources. She testified before both grand juries that indicted the petitioner.

[6] The petitioner consistently characterizes Ms. Perez's grand jury testimony as laden with "perjuries and lies." However, he has failed to produce any evidence that Ms. Perez did not simply misspeak or confuse particular events or dates.

15

grand jury testimony does not constitute ineffective assistance of counsel. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the sixth objection.

### vii.    Failure to Call an Expert Witness

The petitioner's seventh objection argues that Judge Eifert was incorrect in determining that defense counsel's refusal to call an expert to testify regarding the effects of alcohol on children did not constitute ineffective assistance of counsel. Specifically, he argues that additional testimony would have swayed the outcome of the case. Again, however, the decision to call a witness is paramount trial strategy. *Id.* Moreover, it is unlikely that the jury needed an expert to tell them that considerable amounts of alcohol have deleterious effects on the memory and perception of children; indeed, courts have repeatedly held that counsel is not ineffective for failing to call an expert where common sense and experience will suffice. *See, e.g.*, *Young v. Gipson*, 163 F. Supp. 3d 647, 700 (N.D. Cal. 2015), *reconsideration denied sub nom. Young v. Peery*, 163 F. Supp. 3d 751 (N.D. Cal. 2015) (determining that counsel was not ineffective for failing to call an expert witness in eye witness identification where an argument based on common sense and experience was "a rational tactical choice"). This court sees no issue in counsel's sound strategic decision not to call an expert witness to testify as to the effects of alcohol on children.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner's counsel's decision not to call an expert witness to

testify as to the effects of alcohol on children does not constitute ineffective assistance of counsel. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the seventh objection.

### viii.   Denial of the Petitioner's Right to Confront Ms. Perez

In his eighth objection, the petitioner does not raise a specific objection to the PF&R; instead, he asserts a series of questions that should have been asked to Ms. Perez. As such, this court need not conduct a de novo review of this objection. *See Orpiano*, 687 F.2d at 47 (determining de novo review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.").

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** no error in Judge Eifert's finding as to the denial of the petitioner's right to confront Ms. Perez. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the eighth objection.

### ix.   Failure to Raise the Issue of Petitioner's Competency

The petitioner's ninth objection contests Judge Eifert's finding that counsel's failure to raise the issue of the petitioner's competency did not constitute ineffective assistance of counsel. First, the petitioner argues that Judge Eifert should have considered suicide attempts described in an affidavit submitted with his Memorandum of Law in opposition to the Respondent's Motion. Obj. 13. However, in § 2254(d)(1) proceedings, the court's review is "limited to the record that was before

the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Despite the petitioner's contention that he presented evidence of his suicide attempts to the state court, such evidence is not in the record before the court. Accordingly, evidence of the suicide attempts should not be considered.

Even assuming, however, that counsel knew of the petitioner's earlier suicide attempts, counsel had little reason to doubt the petitioner's competency to stand trial in the present case. In both the arraignment and colloquy, the petitioner indicated that he understood the proceedings and his substantive rights. *See* Resp't's Mot. Summ. J. Ex. 4 [ECF No. 10-4]; Resp't's Mot. Summ. J. Ex. 11, at 190–93 [ECF No. 1-11]. Moreover, even after the petitioner asserted his conspiracy theory, the trial court found that the petitioner was competent. Resp't's Mot. Summ. J. Ex. 7, at 30 [ECF No. 10-7]. Although no formal hearing took place, the judge's ruling occurred in 2004—after witnessing the petitioner's behavior in court before, during, and after trial.

Furthermore, although the petitioner points to excerpts of psychiatric evaluations to prove that he was incompetent to stand trial,[7] those evaluations do not state that he was incompetent during or before the trial. Also, despite the petitioner's assertion that his refusal to participate in earlier court-scheduled mental evaluation indicates that he was incompetent, mere refusal to take a test does not

---

[7] The totality of those evaluations do not appear in the record. To the extent the evaluations are included, favorable excerpts appear in the petitioner's initial appellate brief to the WVSCA. *See* Resp't's Mot. Summ. J Ex. 5, at 14–15 [ECF No. 10-5].

"indicate a present inability to assist counsel or understand the charges." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Finally, the petitioner argues that the following in-court exchange proves that his counsel should have had him psychologically evaluated:

> COURT: What is the stipulation?
>
> [Counsel]: Rodger Mitchell's birthday is—
>
> [Petitioner]: February 21, 1957, September 21.
>
> COURT: Okay. This is an allegation of the indictment. All right? [Y]ou're presumed innocent, Mr. Mitchell. You don't have to stipulate to anything. You understand what I'm saying? . . . . It an [sic] essential element in a case like this.
>
> [Petitioner]: My birthday?
>
> COURT: The point I'm making is, you don't have to stipulate to this. If you do, that removes this as an issue in this case.
>
> [Petitioner]: I don't understand. I'll let [counsel] decide what to do.

Obj. 16. The court is not convinced that this isolated exchange should have led counsel to have the petitioner's competency examined.

Moreover, even if counsel was objectively unreasonable in failing to raise the issue of the petitioner's competency, the petitioner is unable to prove prejudice. Indeed, the court's lone ruling on competency indicates that—after witnessing the petitioner's behavior in court on numerous instances—it would likely have found him competent.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** no error in Judge Eifert's determination that counsel's failure to raise the petitioner's competency during the underlying proceedings did not constitute ineffective assistance of counsel. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the ninth objection.

### x.  Failure to Object to Improper Interview Techniques

The petitioner's tenth objection contests Judge Eifert's finding that counsel's failure to object to allegedly improper interview techniques used by the police and Child Protective Services did not constitute ineffective assistance of counsel. The petitioner first claims that in his state habeas petition, he provided case law that cuts against having a man with a gun at children's interviews. Obj. 17. Because he provided no citation, the court conducted a careful review of the record and relevant case law. The court found nothing.

Even had the court found a case that cut against armed police officers sitting in on administrative interviews with children,[8] it would not have implicated the effectiveness of the petitioner's counsel. As Judge Eifert noted, the interviews in question took place in April and May of 2001—before counsel represented the petitioner. PF&R 63. Counsel cannot be ineffective for failing to stop or monitor an interview that occurred before an attorney-client relationship existed. Therefore,

---

[8] That such case law would apply to a police officer aiding in a Child Protective Services interview is dubious. As Judge Eifert stated, "The presence of a police officer during an interview does not *per se* taint the interview; indeed, many child abuse victims are interviewed by police officers or Child Protective Services workers accompanied by police officers." PF&R 64.

counsel's conduct is not—indeed, cannot be—ineffective assistance of counsel.

Moreover, the petitioner cannot demonstrate prejudice from the alleged improper interview techniques. Indeed, counsel relied on those interviews to undermine the credibility of the children during trial. *See, e.g.*, Resp't's Mot. Summ. J. Ex. 10, at 127–129 (pointing out inconsistencies between interviews).

Finally, petitioner again argues that his counsel was ineffective for failing to call Ms. Perez or Officer Kenny at trial to address the interview. Again, the decision to call or not call a witness is strategic. The court sees no issue in counsel's strategic decision.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that counsel's conduct in relation to the techniques employed by the CPS and police during interviews does not constitute ineffective assistance of counsel. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the tenth objection.

### xi.   Failure to Object to the Trial Court Only Dismissing Counts 7, 8, 10, 11, 12, and 15

The petitioner's final objection argues that his counsel was ineffective for failing to object to the Circuit Court's refusal to dismiss all counts against the petitioner. However, counsel did object to the Circuit Court's decision not to dismiss all counts, and he successfully preserved those issues for appeal. Resp't's Mot. Summ. J. Ex. 1, at 15 ("The Order from [the petitioner's post-trial hearing] clearly notes that '[t]he objections and exceptions of the Defendant are noted and preserved for appeal.")

[ECF No. 10-1]; Resp't Mot. Summ. J. Ex. 2, at 2 [ECF No. 10-2].

Moreover, the petitioner's argument that the court would have realized that insufficient evidence existed as to counts 1, 2, 4, and 5 if pressed by defense counsel is unpersuasive. His assertion that "[t]estimony alone is not proof" is inaccurate; indeed, the Supreme Court of Appeals of West Virginia has held that testimony from child abuse victims alone is sufficient to sustain a conviction for child abuse. *State v. Edward Charles L.*, 398 S.E.2d 123, 141 (W. Va. 1990). For a victim's testimony to be insufficient to sustain a conviction, the petitioner must show "'complete untrustworthiness' . . . [demonstrated by testimony that] defies physical laws." *Id.* (citation omitted). That is not the case here. Therefore, counsel did not render ineffective assistance by refusing to press the judge for a specific showing as to why counts 1, 2, 4, and 5 were not dismissed.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that counsel did not render ineffective assistance by failing to press the judge as to the reasons counts 1, 2, 4, and 5 were not dismissed. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the eleventh objection.

### B. Objections to Findings Related to Prosecutorial Misconduct

The petitioner's next series of objections takes issue with Judge Eifert's findings related to his prosecutorial misconduct claims. Absent a claim that the prosecutor's conduct stripped the petitioner of a specific guarantee of the Bill of

Rights,[9] "a finding of error as to a prosecutor's remark [or conduct] requires that it 'so infected the trial with unfairness as to make the resulting verdict a denial of due process.'" *United States v. Runyon*, 707 F.3d 475, 507 (4th Cir. 2013). To determine whether the defendant's fundamental right to due process was violated, the court must consider "numerous factors, which include the nature of the prosecutorial misconduct, the extent of the improper conduct, the issuance of curative instructions from the court, any defense conduct inviting the improper prosecutorial response, and the weight of the evidence." *Humphries v. Ozmint*, 397 F.3d 206, 218 (4th Cir. 2005). With those factors in mind, the court now turns to the petitioner's objections.

### i.   Prosecution's Encouragement of Ms. Perez to Present Perjury to the Grand Jury

The petitioner first objects to Judge Eifert's determination that he was not entitled to relief for the prosecution's alleged scheme to have Ms. Perez perjure herself before a grand jury. The petitioner first argues that the prosecution used Ms. Perez's perjury as "frosting on the cake for the to work with. Perjured (SMOKE) [sic]." Obj. 23. However, the prosecution elicited several crumbs of testimony from Ms. Perez that were far from sweet; indeed, it appears the prosecution cut deep in its grand jury examination, revealing several morsels tending to embitter its case. *See* Resp't's Mot. Summ. J. Ex. 13, at 18–21 [ECF No. 10-13] (eliciting testimony from Ms. Perez undermining the credibility of the children). Simply put, the prosecution's questioning at the grand jury phase reveals no intention to cook a case against the

---

[9] For example, a defendant's privilege against self-incrimination.

petitioner. The petitioner's speculative assertions that the prosecution intentionally burned him with false testimony at the grand jury phase cannot sustain a finding of prosecutorial misconduct, especially in light of the Fourth Circuit's determination that "[r]elief from an erroneous indictment after a case has been decided by a petit jury is rarely granted." *United States v. McDonald*, 61 F.3d 248, 253 (4th Cir. 1995), *overruled on other grounds by United States v. Wilson*, 205 F.3d 724 n.1 (4th Cir. 2000).

Furthermore, the petitioner's later arguments that the state altered documents are unfounded. Although the petitioner claims that an excerpt from an April 21, 2001, interview references movies obtained by a May 10, 2001, search warrant, review of that excerpt fails to validate the petitioner's conjecture. *See* Pet'r's Mem. Opp'n Resp't's Mot. Summ. J. Ex. 2, at 8 [ECF No. 26-2]; Obj. Ex. 2, at 2–3 [ECF No. 40-2]. There is no indication that the videos referenced in the April 21, 2001, interview are the ones later seized by the state; a few unclear statements do not a conspiracy make.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner has raised no grounds for relief for prosecutorial misconduct stemming from the prosecution's alleged scheme to have Ms. Perez perjure herself before the grand jury. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the twelfth objection.

### ii.    Prosecutor's Improper Remarks

Next, the petitioner argues that Judge Eifert was incorrect when she found that several remarks by the prosecutor did not render the trial so unfair as to deny the petitioner due process. First, the petitioner reiterates his position that the prosecutor denied him due process by urging the jury to consider events "from the children's viewpoint." Obj. 24. The prosecutor's comments urged jurors to place themselves in the shoes of the victim, violating the so-called "golden rule." *See United States v. Williams*, 392 F. App'x 194, 196 (4th Cir. 2010). However, the prosecutor's lone remark was not so insidious as to undermine the petitioner's due process. Indeed, the factors articulated in *Humphries* weigh against the petitioner: the prosecutor only once called for the jury to place themselves in the shoes of the victim, the judge indicated that the prosecutor's remarks were not evidence, and the evidence was sufficient to convict the petitioner. Therefore, the petitioner's first argument fails.

The petitioner also argues—for the first time—that it was improper for the prosecution to remark, "The State has proven beyond a reasonable doubt that the defendant has committed the charged crimes," and, "Your State trusts that 'you will find him guilty.'" Obj. 25. Because this statement falls outside the ambit of Judge Eifert's PF&R, this court need only examine the record for plain error. *See Diamond*, 416 F.3d at 315. These statements do not constitute plain error because they were not aimed at "inflaming the passions of the jury." *See, e.g.*, *United States v. Caliendo*, 910 F.2d 429, 436–37 (7th Cir. 1990) ("Although remarks during closing argument

25

may not be aimed at inflaming the passions of the jury, it is entirely appropriate for the prosecutor to 'impress upon the jury the seriousness of the charges' as they have been brought in the indictment.") Therefore, the petitioner's second argument fails.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner has raised no grounds for relief for prosecutorial misconduct stemming from the prosecution's statements during closing arguments. The court **ADOPTS** the findings and recommendation of the PF&R and overrules the thirteenth objection.

### C. Cumulative Error

In his final objection, the petitioner argues the Judge Eifert's PF&R should not be adopted because she failed to address his cumulative error ground for relief. Under the cumulative error doctrine, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (citation omitted). Considered cumulatively, the petitioner's asserted grounds are not sufficient for relief.

Accordingly, after review of the evidence, arguments, and trial testimony, the court **FINDS** that the petitioner has raised no grounds for relief from cumulative error and overrules the fourteenth objection.

### IV.    Conclusion

As discussed above, the court **ADOPTS** Judge Eifert's PF&R as to all issues, **GRANTS** the respondent's Motion for Summary Judgment [ECF No. 10], and

**ORDERS** that the petitioner's Petition for Writ of Habeas Corpus [ECF No. 2] be **DISMISSED** and **STRICKEN** from the docket of this court. Additionally, the petitioner's letter-form Motion to Withdraw his Motion for a Ruling of Deafult [ECF No. 31] is **GRANTED**, and accordingly, the petitioner's Motion for a Ruling of Default is **WITHDRAWN**. Finally, the petitioner's Motion for Evidentiary Hearing [ECF No. 41] is **DENIED** as moot.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      September 29, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

27